475 P.2d 238

**The STATE of Arizona, Appellee,**

**v.**

**Stephen Earl PEATS, Appellant.**

**No. 2030.**

Supreme Court of Arizona,
In Banc.

Oct. 8, 1970.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

William A. Coffeen, Yuma, for appellant.

STRUCKMEYER, Vice Chief Justice.

On March 2, 1963, appellant, Stephen Earl Peats, was convicted after a jury trial in Yuma County, Arizona, of first degree murder. The jury recommended imprisonment in the State Prison for life. No timely appeal was taken from the conviction and sentence, but, on the 16th of May, 1969, Peats filed a motion in this court under Supreme Court Rule 16(a), 17 A.R.S., to take a delayed appeal, setting forth that he did not appeal within the mandatory 60 days because he had not been advised by his then lawyer that he had a right to appeal. The Attorney General filed a response to Peats' motion, recommending that Peats be given an out of time appeal, and the Superior Court of Yuma County, having found that Peats was indigent, appointed an attorney to act on his behalf and ordered that a record be furnished at the County's expense.

The record discloses that on the morning of September 29, 1962, Peats and a friend were traveling from Los Angeles, California to the State of Louisiana. At a roadside rest area east of Yuma they saw a small black automobile pulled off the road with the driver, alone in the seat, asleep. Peats and his companion then endeavored to rob the driver, but a fight ensued in which the driver was shot to death. Peats and his companion hid the victim's body and took his billfold, watch, and other items of value. There is evidence that Peats had been taking drugs for several days prior to this incident and had only a vague recollection of what occurred.

The court instructed the jury that the State had to prove beyond a reasonable doubt that the homicide was either premeditated or committed in the perpetration of a robbery; and that, to consider the claim of robbery, the State had to prove that at the time the crime was committed the defendant had a specific felonious intent to steal. Immediately following, the court gave this instruction requested by the State:

"You are instructed that voluntary intoxication does not excuse the commission of crime. You are further instructed that intoxication is being under the influence of an intoxicating liquor or drug. A person who voluntarily becomes intoxicated with or without a preconceived design to commit a crime and while intoxicated, though it is to such a degree as to render him fully oblivious to his acts or conduct, does any act which if done by a person capable of distinguishing between right and wrong, is responsible for his act."

Peats now urges that the instruction was so erroneous as to require a reversal of his conviction.

In considering his argument, it should be first stated that no objection was made at the trial to the giving of the instruction. Ordinarily, errors in instructions to which no objections are made will be considered as waived. This principle was recently stated in State v. Norgard, 103 Ariz. 381, 383, 442 P.2d 544, 546 in this language:

"We have held many times that this Court will only consider such questions

as were raised at trial with respect to errors or omissions in the giving of instructions unless such claimed error is so fundamental that it is manifest the defendant did not receive a fair trial. [Citations]."

It is urged that the instruction permitted the jury to find a specific intent to rob even though defendant was "intoxicated to such a degree as to render him fully oblivious to his acts or conduct." Peats ascribes to the word "oblivious" the meaning of lacking conscious knowledge or awareness, thereby suggesting that the jury could believe that even if defendant was so intoxicated from liquor or drugs that he was consciously unaware of what he was doing at the time of the offense, and hence lacking a specific intent, he could still legally commit the crime of robbery.

■ However, the word "oblivious" has another well understood meaning. Webster's Third International Dictionary also defines oblivious as "lacking remembrance, memory, or mindful attention: characterized by forgetfulness." We think it was in this latter sense that the court intended and the jury must have understood the word "oblivious." Particularly we think this was true in the light of the setting of this criminal case. First, because the defendant's case presented testimony that he could remember only some of the details of the homicide, and, second, because the court unequivocally required that the State prove that Peats had a specific felonious intent to steal at the time of the homicide. In the sense that the instruction means that a lack of remembering is not a defense to a crime it was not erroneous. Without an appropriate objection, the claimed error is not so fundamental that it is manifest the defendant did not receive a fair trial.

■ Moreover, the defendant in his proposed instruction number seven requested that the court charge the jury in the language of the statute, A.R.S. § 13–132, on the legal effect of intoxication as a defense to a criminal charge. For reasons which are not disclosed, the defendant later modified his proposed instruction, eliminating any reference to the statute. By § 13–132, where a crime requires the formulation of a specific intent, the intoxication of the accused may be shown as a defense. See State v. Roqueni, 94 Ariz. 72, 381 P.2d 757. Apparently the defense was satisfied for the court to instruct the jury simply that it was necessary for the State to prove the defendant had a specific felonious intent to steal at the time the crime was committed. We think that the defendant's modification of his own proposed instruction by deleting the reading of A.R.S. § 13–132 is a waiver of any claim of error now.

The defendant further complains of the refusal of the trial court to give his requested instructions numbers 6 and 6(a). Defendant's requested instruction number 6 is a haec verba quotation from Rule 288 of the Rules of Criminal Procedure, 17 A.R.S. Rule 288 of the Rules of Criminal Procedure provides that if the defendant in a criminal case is acquitted on the grounds of insanity, the court shall direct that a petition be filed for the examination of the defendant as a mentally ill person. The defendant's instruction number 6(a) is to the effect that Rule 288 provides the means of keeping a defendant under restraint pending a sanity hearing by directing his confinement in the State Hospital.

■ We think the two proposed instructions tended to inform the jury concerning matters which were not properly their concern. It is the jury's duty to find the facts. In finding the facts, the jury should be guided by the evidence in the case and should not consider extraneous matters which might tend to influence their verdict independent of the facts surrounding the commission of the offense.

Defendant claims error because the trial court did not hold a separate hearing outside the presence of the jury to determine the voluntariness of his statements made to certain police officers, urging that this was in violation of the holding of Jackson v.

Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908.

We think Peats' position is without merit, being of the opinion that the holding in Jackson v. Denno has no application to the decision here. It is true the record of this trial is replete with statements attributed to Peats which can hardly be characterized as less than repeated confessions, but no objection was made to their introduction and no claim or suggestion was made that they were involuntary. Peats' plea to the charge of murder was not guilty and not guilty by reason of insanity. His trial strategy was not to suppress the facts of the homicide but to emphasize those which conformed to his defense as testified to by his expert witness, Dr. Harrison Mead Baker, a psyhciatrist. Dr. Baker expressed the view that defendant could not, because of his drugged condition, distinguish between right and wrong at the time of the commission of the offense.

In State v. Simoneau, 98 Ariz. 2, 7, 401 P.2d 404, 407, we said:

"Of course, where no question is presented to the court either by counsel or by the evidence at the trial suggesting that a confession is involuntary, there is no issue of fact to be determined by the court in the absence of the jury and no need for a specific ruling."

The statements of the United States Court of Appeals in Evans v. United States, 5 Cir., 377 F.2d 535, 537, adequately reflect our conclusion here:

"Appellant also contends that the trial court erred in not holding a hearing to determine whether her 'confession' to the agents was voluntary. Jackson v. Denno, 1964, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. Suffice it to say that voluntariness was never put in issue. Not only was there no objection but there was no way the trial court could have been aware that the voluntariness of her oral statements to the agents was questioned. See 378 U.S. at 374, 84 S.Ct. 1774. There must be a limit to the clairvoyance we require the trial courts to possess."

Accordingly, we hold that no separate hearing w s required to test the voluntariness of defendant's statements admitted without objection, no involuntariness then appearing or being asserted.

Defendant finally urges that the admission of certain exhibits at the trial was prejudicial. Two of the exhibits were photographs of the decomposed body of the victim of the homicide. We have repeatedly said that the exclusion of this type of exhibit is within the discretion of the trial judge. See State v. Goodyear, 98 Ariz. 304, 404 P.2d 397.

Defendant also complains of the admission of a certain thirty-two caliber pistol. We are not certain of the relevancy of this exhibit, but no objection was then made on the part of the defendant. Had such an objection been made, the trial court might properly have excluded it.

Judgment affirmed.

UDALL, McFARLAND and HAYS, JJ., concur.

LOCKWOOD, Chief Justice (dissenting):

I dissent on the ground the instruction regarding voluntary intoxication was prejudicially misleading.