**Emerson NAUGHER, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 83–176.

Supreme Court of Wyoming.

Aug. 7, 1984.

38

Leonard D. Munker, State Public Defender, Sylvia Lee Hackl, Appellate Counsel, and Martin J. McClain, Asst. Appellate Counsel, Wyoming Defender Aid Program, Cheyenne, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John Renneisen, and Mary B. Guthrie, Senior Asst. Attys. Gen., for appellee.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN, and CARDINE, JJ.

THOMAS, Justice.

The only question in this case is whether Naugher was entitled to have the jury instructed that it could consider his intoxication in determining whether he acted with the specific intent required for the commission of the crime charged. An appropriate instruction with respect to the effect of intoxication upon specific intent was offered by Naugher at his trial, but the district court refused to give it. We conclude that the district court properly refused to give the offered instruction, and we affirm the judgment and sentence.

In his brief Naugher states the issue to be:

"Whether the trial [court] committed prejudicial error when it refused to instruct the jury that evidence showing Appellant acted while in a state of intoxication could be considered in determining whether Appellant acted with the specific intent necessary to convict him of aggravated robbery."

In its brief the State of Wyoming restates the issue in this way:

> "Was it error for the trial court to refuse to offer an instruction that defendant's intoxication could affect his ability to form the specific intent necessary to commit aggravated robbery?"

Early in July the victim in this case was "riding the rails" in search of employment. In the train yard at Laurel, Montana, the victim met Naugher and another individual named Drayton. The victim inquired of Drayton and Naugher where they were traveling, and upon learning that their destination was Florida the victim decided to travel with them. The victim then volunteered to obtain some liquor to take with them if one of the two would accompany him to a liquor store. Drayton went with him, and the victim purchased two bottles of beer, which he and Drayton consumed, two-fifths of white port wine and a pint of vodka. They took the wine and vodka with them back to the railroad yard.

The victim, Drayton, Naugher, and an unidentified older man boarded an open freight car attached to a train headed for Cheyenne. The victim, Naugher and Drayton settled down in one end of the car while the other man went to the opposite end. As they were traveling, the victim, Naugher and Drayton began to drink the wine and vodka, passing the bottles around. The victim, who had been traveling all of the previous day and night, soon became intoxicated and went to sleep. His next clear recollection was awaking in a hospital bed in Sheridan, Wyoming. He was taken to the hospital after having been found wandering near the railroad tracks, and it was discovered that he was suffering from numerous injuries, including a broken nose, a dislocated shoulder and cuts and bruises, as well as a possible concussion. The victim did not have a clear recollection of what had occurred from the time he went to sleep in the railroad car until he found himself in the hospital.

The record discloses that the victim was without some of his property following his encounter with Naugher and Drayton. Property which he was missing was found in the possession of Naugher. Treating physicians testified that serious bodily injury had been inflicted upon the victim in accordance with the definition found in § 6–1–104(a)(x), W.S.1977 (June 1983 Rev.), which states:

> "(x) 'Serious bodily injury' means bodily injury which creates a substantial risk of death or which causes miscarriage, severe disfigurement or protracted loss or impairment of the function of any bodily member or organ."

The State relied upon testimony from Drayton to establish the events of the robbery and infliction of injury upon the victim. This was possible because of a plea bargain entered into with Drayton pursuant to which he was permitted to plead guilty to simple robbery, and a recommendation for probation instead of incarceration was submitted to the district court. The fact of this arrangement was made known to the jury both during the opening statement of the prosecution and during Drayton's testimony. Drayton testified that the three men began drinking the wine and vodka soon after they boarded the train. He said that Naugher "was pushing [the victim] quite a bit of wine and liquor." The victim, according to Drayton, soon became intoxicated and passed out. Naugher then began emptying the victim's pockets, taking a pocket knife, a wallet containing twenty dollars and his identification. Drayton testified that when the victim began to awaken Drayton controlled him while Naugher struck him twice with a pipe. Naugher and Drayton then dragged the victim to the door of the moving freight train and forced him to jump, leaving his other possessions behind. After the victim was found near the railroad tracks in Sheridan the train was stopped in Gillette, and Naugher and Drayton were arrested. A personal search of Naugher disclosed the pocket knife, the wallet, and nail clippers belonging to the victim, were in Naugher's possession.

Soon after the victim was discovered and taken to the hospital Naugher and Drayton were charged with the crime of aggravated

robbery as defined in § 6–2–401(c)(i), W.S. 1977 (June 1983 Rev.). In the Wyoming Criminal Code of 1982, § 6–2–401 defines the crime of robbery as follows:

"(a) A person is guilty of robbery if in the course of committing a crime defined by W.S. 6–3–402 he:

"(i) Inflicts bodily injury upon another; or

"(ii) Threatens another with or intentionally puts him in fear of immediate bodily injury.

\*     \*     \*     \*     \*     \*

"(c) Aggravated robbery is a felony punishable by imprisonment for not less than five (5) years nor more than twenty-five (25) years if in the course of committing the crime of robbery the person:

"(i) Intentionally inflicts or attempts to inflict serious bodily injury; \* \* \* "

Section 6–3–402(a), W.S.1977 (June 1983 Rev.), provides as follows:

"(a) A person who steals, takes and carries, leads or drives away property of another with intent to deprive the owner or lawful possessor is guilty of larceny."

The charge against Drayton was resolved by his plea of guilty in accordance with the plea bargain. Naugher was convicted after a trial to a jury. He then was sentenced to a term of not less than five and not more than fifteen years in the penitentiary. This appeal is taken from that judgment and sentence.

After the close of the evidence Naugher offered his requested Instruction A, which provided:

"Voluntary intoxication is no excuse for the commission of a crime. However, pertinent portions of the Wyoming Statutes provide that 'Where a crime rests in intention, the inebriated condition of the

defendant at the time of committing the offense may be proved to the jury, as bearing upon the question of intention.' Thus, evidence that a defendant acted or failed to act while in a state of intoxication is to be considered in determining whether or not the defendant acted, or failed to act, with specific intent as charged." [1]

The district court refused the requested instruction, and in accordance with the requirement of Rule 31, W.R.Cr.P.,[2] Naugher's counsel stated his objection to the refusal in this way:

"We object to the failure to give Instruction A because we believe that the evidence shows satisfactorily that all of the parties were drinking heavily including the defendant and that the drinking may have been a factor in the crime."

The record does not disclose any claim of intoxication by Naugher prior to the offering of the proposed instruction. The only evidence came from Drayton and the victim. The victim said:

"Yeah. We were drinking and I had been traveling, you know, all night and all day and was pretty tired, and I hadn't drank for quite a while. The booze was pretty heavy because after the train got under way, one of the fellows, this fellow right here [Naugher], he laid down his blanket and everything, and so I laid mine out next to his, you know, and I laid down and we drank and talked and the other fellow was sitting against the wall and passing the bottle back and forth, and I laid down on my back there and I went to sleep, \* \* \*."

Drayton testified as follows:

"Q And you and Mr. Naugher and [the victim] are drinking?

---

**1.** Section 6–1–202(a), W.S.1977 (June 1983 Rev.), provides:

"Self-induced intoxication of the defendant is not a defense to a criminal charge except to the extent that in any prosecution evidence of self-induced intoxication of the defendant may be offered when it is relevant to negate the existence of a specific intent which is an element of the crime."

**2.** Rule 31, W.R.Cr.P., provides that the manner of making objections to the giving of jury in-

structions is controlled by the Wyoming Rules of Civil Procedure. Rule 51, W.R.C.P., provides in part that:

"\* \* \* No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. \* \* \*"

"A  Yes, sir.

\*  \*  \*  \*  \*  \*

"Q  So you had the drinks before the incident happened; is that correct?

"A  We was all drinking before the incident happened, sir, me and [the victim] and Mr. Naugher was drinking on the train while we was riding."

In his argument to this court Naugher places primary reliance upon *Goodman v. State*, Wyo., 573 P.2d 400 (1977). In that case this court reversed a conviction of murder in the first degree because we held that the defendant was entitled to an instruction on intoxication. Goodman's theory of the case was that because of voluntary intoxication he was incapable at the time of the crime of forming the requisite specific intent for first-degree murder at the time of the crime. We do not recede from our holding in *Goodman v. State*, supra, that a defendant in a criminal case has the right to an affirmative instruction on his theory of the case when there is competent and substantial evidence to sustain that theory and his offered instruction is sufficient to apprise the trial court of his theory. The failure to affirmatively instruct the jury with respect to the defendant's theory of the case in such circumstances violates due process and is prejudicial error. *Garcia v. State*, Wyo., 667 P.2d 1148 (1983); *Grable v. State*, Wyo., 649 P.2d 663 (1982); *Scheikofsky v. State*, Wyo., 636 P.2d 1107 (1981); *Goodman v. State*, supra; *Blakely v. State*, Wyo., 474 P.2d 127 (1970); and *State v. Hickenbottom*, 63 Wyo. 41, 178 P.2d 119 (1947).

Naugher's application of these rules to the facts of his case, however, is misplaced. During the trial, except for the offered instruction, Naugher apparently did not rely upon voluntary intoxication as a theory in his defense. It was his position that there was not sufficient credible evidence to establish beyond a reasonable doubt that he had committed the crime of aggravated robbery. He did not assert that he became so intoxicated that he was incapable of forming the requisite specific intent to commit the crime except by the proffered instruction. Instead Naugher insisted that the victim became so intoxicated that he could not remember what occurred and could not even say whether he had been robbed or who might have done it. Naugher also insisted that Drayton's testimony was not credible and he sought to suggest that if any crime was committed Drayton was the guilty party. Given the circumstances of this case, the statement of the Supreme Court of Kansas is an appropriate summation:

> "While it is true the defendant is entitled to have his theory of the case presented to the jury under appropriate instructions, intoxication was never presented by the appellant as a theory in this case, and he cannot do so for the first time on appeal. \* \* \*" *State v. Garcia*, 233 Kan. 589, 664 P.2d 1343, 1358 (1983).

Before a defendant is entitled to an instruction on voluntary intoxication with respect to the element of specific intent in a crime involving such an element, there must be competent evidence in the record to support the giving of the instruction. *Goodman v. State*, supra. When, as here, the record reveals no evidence of the defendant's intoxication, no instruction is appropriate. *Goodman v. State*, supra; *Miller v. State*, Wyo., 560 P.2d 739 (1977). The only evidence in this record that approaches intoxication is the testimony of the victim and Drayton that Naugher was drinking on the train. There is no evidence of how much Naugher drank, what period of time was involved, or what effect, if any, the drinking had on him. The lack of this information serves to distinguish this case from *Goodman v. State*, supra, and like many other jurisdictions, some with statutes similar to § 6–1–202(a), W.S.1977 (June 1983 Rev.), we hold that a mere showing that a defendant may have been drinking prior to the commission of a crime is not sufficient to establish intoxication nor to require the giving of an instruction

even if one is requested. *State v. Roqueni,* 94 Ariz. 72, 381 P.2d 757 (1963), cert. denied 375 U.S. 948, 84 S.Ct. 359, 11 L.Ed.2d 278 (1963); *People v. Turville,* 51 Cal.2d 620, 335 P.2d 678, cert. denied 360 U.S. 939, 79 S.Ct. 1465, 3 L.Ed.2d 1551 (1959); *People v. Montez,* 197 Colo. 126, 589 P.2d 1368 (1979); *Wright v. State,* Del., 374 A.2d 824 (1977); *Nicholson v. United States,* D.C.App., 368 A.2d 561 (1977); *Jacobs v. State,* Fla., 396 So.2d 1113 (1981), cert. denied 454 U.S. 933, 102 S.Ct. 403, 70 L.Ed.2d 239 (1981); *Wolfe v. State,* 270 Ind. 81, 383 N.E.2d 317 (1978); *State v. Haines,* Iowa, 259 N.W.2d 806 (1977); *State v. Smith,* Me., 277 A.2d 481 (1971); *State v. Hill,* Minn., 256 N.W.2d 279 (1977); *State v. Prim,* 201 Neb. 279, 267 N.W.2d 193 (1978); and *Hatcher v. Commonwealth,* 218 Va. 811, 241 S.E.2d 756 (1978).

The evidence in this case was insufficient to justify the giving of an instruction such as that requested by Naugher advising the jury of the effect of intoxication upon the element of specific intent. There was no error in the refusal of the district court to instruct the jury on the factor of intoxication because intoxication was not supported by any substantial evidence nor was it an affirmative theory in Naugher's trial presentation of the case.

The judgment and sentence is affirmed.